UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LEROY R.,

           Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.
_____

**DECISION AND ORDER**

1:20-CV-01299-EAW

# INTRODUCTION

Represented by counsel, Plaintiff Leroy R. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 13; Dkt. 16). For the reasons discussed below, Plaintiff's motion (Dkt. 13) is denied and the Commissioner's motion (Dkt. 16) is granted.

## BACKGROUND

Plaintiff protectively filed his application for SSI on November 15, 2017. (Dkt. 10 at 118, 129).[1] In his application, Plaintiff alleged disability beginning March 6, 2017. (*Id.* at 119). Plaintiff's application was initially denied on February 2, 2018. (*Id.* at 118-27). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Stephen Cordovani on September 26, 2019. (*Id.* at 36-82). On October 2, 2019, the ALJ issued an unfavorable decision. (*Id.* at 22-31). Plaintiff then requested review by the Appeals Council, which the Council denied on July 16, 2020, making the ALJ's determination the final decision of the Commissioner. (*Id.* at 9-11).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically

equals the criteria of a Listing and meets the durational requirement (*id*. § 416.929), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e). The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I. The ALJ's Decision

In deciding whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation analysis set forth in 20 C.F.R. § 416.920. (Dkt. 10 at 22-31). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since November 15, 2017, the application date. (*Id.* at 24).

At step two, the ALJ found that Plaintiff suffered from two severe impairments: obesity and herniated disc in the low back. (*Id*. at 24). The ALJ also determined that Plaintiff's diabetes mellitus, hypertension, obstructive sleep apnea, arthroplasty of the left

fifth toe, and small posterior disc bulge of the cervical spine were non-severe impairments. (*Id*. at 25).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*.). Before proceeding to step four, the ALJ concluded that Plaintiff retained the RFC to perform light work with several exertional limitations. (*Id*. at 26). Specifically, the ALJ determined that Plaintiff could sit, stand, and/or walk with normal breaks for a total of six hours per day; lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently; frequently climb ramps, kneel, crawl, and perform balancing activities, and occasionally stoop and crouch. (*Id*.). The ALJ also determined that Plaintiff cannot climb ladders, ropes, and scaffolds. (*Id*.).

At step four, the ALJ found that Plaintiff was able to perform his past relevant work as a security guard. (*Id.* at 29). Despite reaching this conclusion, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as the occupations of a small products assembler, cashier II, and sales attendant. (*Id.* at 30-31). Accordingly, the ALJ concluded that Plaintiff was not disabled from the date of Plaintiff's application for disability benefits through the date of his decision. (*Id.* at 31).

## II.   The Commissioner's Determination is Supported by Substantial Evidence

Plaintiff argues that the ALJ failed to incorporate the findings of consultative examiner Dr. Nikita Dave about Plaintiff's moderate limitations in prolonged sitting, standing, and walking into his RFC, and that the Appeals Council failed to consider the

evidence he submitted for its review after the ALJ issued his decision. (Dkt. 13-1 at 10-15-19). The Court finds both arguments unpersuasive.

### A.     RFC Determination

Under recent amendments to the Social Security regulations related to the evaluation of medical evidence for disability claims filed after March 27, 2017, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a).[2] Instead, the ALJ "will articulate in [his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions and all prior administrative medical findings" in claimant's record based on the following five factors: supportability, consistency, relationship with the claimant, specialization, and "other factors." *Id.* § 416.920c(c). The source of the opinion is not the most important factor in evaluating its persuasive value. *Id.* § 416.920c(b)(2). Rather, the most important factors in evaluating persuasiveness are supportability and consistency. *Id*.

"Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021) (internal citation omitted). The ALJ's failure to explain how he considered the supportability and consistency of medical opinions

---

[2]     Because Plaintiff's claim was filed on November 15, 2017, the new regulations, codified at 20 C.F.R. § 416.920c, apply.

is a procedural error that warrants remand unless "a searching review of the record assures [the court] that the substance of the [regulation] was not traversed." *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (citation and internal quotation marks omitted).

In crafting Plaintiff's RFC, the ALJ considered several medical opinions, a prior administrative finding, as well as the record of Plaintiff's conservative treatment, part-time employment and extracurricular activities, to determine that Plaintiff's impairments did not limit his ability to perform his past work in accordance with the RFC. (Dkt. 10 at 26-29). Specifically, the ALJ considered the opinion of consultative examiner Dr. Dave, who opined that Plaintiff had moderate limitations in repetitive bending, twisting through the lumbar spine, maintaining non-neutral spinal positions for a prolonged period of time, lifting, carrying, pushing/pulling of heavy objects, as well as prolonged sitting, standing, and walking. (*Id*. at 391). The ALJ found Dr. Dave's opinion to be "somewhat persuasive" because it was supported by Dr. Dave's findings and was consistent with the record, Dr. Dave's program knowledge, and his examination of Plaintiff. (*Id*. at 29). The ALJ indicated that he found the opinion slightly less persuasive than the opinion of medical consultant Dr. Krist only because Dr. Dave, unlike Dr. Krist, did not identify specific frequency of Plaintiff's postural limitations. (*Id*.).

The Court is satisfied with the ALJ's evaluation of Dr. Dave's opinion in accordance with the applicable law. Specifically, the ALJ identified Dr. Dave's findings related to Plaintiff's back impairment, which included Plaintiff's reduced range of motion in the lumbar spine, pain with movements, and negative bilateral straight leg raise test, normal

gait, and full strength in his upper and lower extremities. (*Id*. at 28). Dr. Dave also observed Plaintiff's bilateral full range of motion of shoulders, elbows, forearms, hips, knees, and ankles, as well as full flexion, extension, and rotary movement of his cervical spine, but noted limited extension and flexion of Plaintiff's lumbar spine. (*Id*. at 391). Even though Plaintiff had pain with all lumbar movements, as well as tenderness at the L4-L5 level, he demonstrated nontender and stable joints, no evidence of subluxation, contractures, ankylosis, or thickening, normal neurological findings, and full strength in the upper and lower extremities. (*Id*.). As a result of the examination, Dr. Dave diagnosed Plaintiff with traumatic-onset low back pain, ultimately concluding that Plaintiff was moderately limited in movements through the lumbar spine, lifting, carrying, pushing/pulling of heavy objects, and prolonged sitting, standing, and walking. *See* 20 C.F.R. § 416.920c(c)(1) (supportability means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.").

In his decision, the ALJ also discussed how Dr. Dave's findings and conclusions were consistent with Dr. Bernard Beaupin, Dr. Franco Vigna, Dr. Thomas Suchy, and Dr. Frank Laurri's examinations, which also revealed Plaintiff's moderately limited range of motion and some pain in the lumbar spine, but normal gait, negative straight leg raise tests, and full strength in his lower extremities. (*Id*. at 27-28); *see Darla W. v. Comm'r of Soc. Sec*., No. 5:20-cv-1085 (TWD), 2021 WL 5903286, at *9 (N.D.N.Y. Dec. 14, 2021) ("The consistency factor does not measure whether a medical opinion is consistent with a single

other medical opinion—it measures whether the medical opinion is consistent with *all* medical and nonmedical evidence in a claim.") (emphasis in the original).

Plaintiff argues that the ALJ failed to address his moderate limitations to prolonged standing, sitting, or walking identified by Dr. Dave in the RFC, and that such limitations prevent him from performing light work. (Dkt. 13-1 at 10-15). However, a claimant is not necessarily disabled simply because he is moderately limited in prolonged sitting or standing. *See Carroll v. Colvin*, No. 13-CV-456S, 2014 WL 2945797, at *4 (W.D.N.Y. June 30, 2014). In fact, courts in this Circuit have repeatedly upheld an ALJ's decisions that a claimant could perform light work when there was evidence that the claimant had moderate difficulties in prolonged sitting or standing. *See id.*; *see also Gerry v. Berryhill*, 17-CV-7371 (JS), 2019 WL 955157, at *3 (E.D.N.Y. Feb. 26, 2019) ("Courts within this Circuit have held that opinions of similar 'mild to moderate limitations' support RFC findings that claimants are capable of 'light work.'") (internal citation omitted) (collecting cases)); *Gurney v. Colvin*, No. 14-CV-688S, 2016 WL 805405, at *3 (W.D.N.Y. Mar. 2, 2016) ("moderate limitations . . . are frequently found to be consistent with an RFC for a full range of light work") (collecting cases). Contrary to Plaintiff's assertions, the ALJ appropriately credited Dr. Dave's opinion that Plaintiff had moderate limitations in prolonged sitting, standing, and walking when he limited Plaintiff to performing light work with normal breaks. *See Guy H. v. Comm'r of Soc. Sec.*, No. 1:20-CV-00608 EAW, 2021 WL 4099223, at *4 (W.D.N.Y. Sept. 9, 2021) (mild to moderate limitation in prolonged sitting is accommodated by the ALJ's limitation to light work as well as normal work breaks) (collecting cases).

The Court finds that the RFC is supported by substantial evidence in the record. Specifically, the record demonstrates that Plaintiff routinely complained about having lumbar pain following a motor vehicle accident that took place in February 2017. (Dkt. 10 at 280-92). He did not seek medical help until the day after the accident when he visited the emergency room with complaints of low back pain. (*Id*.). At the time, Plaintiff's examination was largely nonremarkable, except for low back pain, with Plaintiff demonstrating nontender back, and normal strength and range of motion in his back and extremities. (*Id*. at 282). Plaintiff was released with instructions to rest and take Motrin for pain. (*Id*. at 283).

His subsequent medical history and subjective complaints of lower back pain are supported by records of magnetic imaging (MRI) showing large central disc extrusion at the L4-L5 level, moderately narrowed secondary to epidural fat thecal sac at the L5-S1 level, as well as the records of his treatment providers, who documented back pain, waddling gait, reduced lumbar range of motion, positive slump and single leg raise tests, as well as tenderness to palpitation over the lumbar area during Plaintiff's examinations. (*Id*. at 271, 275, 297, 301, 367, 391, 398, 419, 421, 425). However, the record also reveals other examinations when Plaintiff had normal motor strength in both lower extremities, normal and steady gait, full range of motion in lower extremities, full strength in his hips, knees and ankles, normal muscle tone, nontender joints, and negative single leg raise tests bilaterally. (*Id*. at 271, 301-02, 390-91, 399, 403, 406, 410, 413, 416, 423, 426, 429-30). During some of his visits, Plaintiff did not report having any back pain or new onset of leg pain, tenderness, or swelling in his joints, denied weakness, loss of sensation or

coordination in his legs, and indicated that his knee and low back pain was stable. (*Id.* at 309, 398, 405, 415, 418, 421, 423, 430).

In addition to considering medical opinions and prior administrative records, the ALJ properly took into account Plaintiff's conservative course of treatment for his alleged disabling conditions. The record demonstrates that during the relevant period Plaintiff was prescribed non-opioid medications, chiropractic treatment, back brace, and steroid injections to treat his lower back pain. *See Salvaggio v. Apfel*, 23 F. App'x 49, 51 (2d Cir. 2001) ("[T]he result of the plaintiff's choice to seek only minimal medical attention of [his] symptoms . . . supports the finding that the plaintiff was not under a disability. . . ."). He admitted that chiropractic treatment was the only form of treatment that successfully relieved his pain, increased range of motion in his lower back, and improved his symptoms. (Dkt. 10 at 270, 274, 276, 299, 308-09, 389, 428, 445). None of Plaintiff's treatment providers recommended a more invasive form of treatment for Plaintiff's low back impairment. *See Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014) (claimant receiving only conservative treatment is evidence that can weigh against allegations of disabling symptoms). In fact, Dr. Beaupin opined that Plaintiff was a poor candidate for surgical intervention due to his morbid obesity. (Dkt. 10 at 270-71). Dr. Suchy recommended that Plaintiff obtain formal physical therapy session, while Dr. DelMonte indicated that Plaintiff would benefit from the continuous weekly chiropractic adjustments, the use of a TENS unit, and lumbar spine belt. Notably, Dr. DelMonte also opined that Plaintiff was capable of light duty work with no repetitive bending, twisting, or lifting. (*Id.* at 447).

The Court also does not find error in the ALJ's consideration of Plaintiff's part-time employment as a security guard during pendency of his disability application to determine that he was able to perform light work in accordance with the RFC. *See Silva v. Saul*, No. 18-CV-6206 CJS, 2019 WL 2569595, at *5 (W.D.N.Y. June 21, 2019) ("An ALJ may . . . properly consider a claimant's demonstrated ability to work part-time during the relevant period as evidence that the claimant is not completely disabled."). At the hearing, Plaintiff testified that he worked eight-hour shifts on Fridays and Saturdays as a parking lot security guard. (Dkt. 10 at 47-51, 57-58). Even though he provided security from his vehicle, Plaintiff testified that he would sit in his car for approximately 30 minutes, then take a break and walk around, or stand and talk to his colleagues for another 30 minutes before returning back to his car. (*Id.*). Plaintiff's part-time employment did not rise to the level of substantial gainful activity, but his statements concerning intensity of his symptoms were not entirely consistent with the finding of total disability in light of his ability to work part-time as a security guard. *See Teresa G. v. Comm'r of Soc. Sec.*, No. 20-CV-0816-MJR, 2021 WL 1559177, at *6 (W.D.N.Y. Apr. 21, 2021) (the ALJ reasonably considered plaintiff's ability to do routine activities, work part-time, and evidence of normal examination findings to determine that she could perform her past relevant light work). Therefore, while giving the benefit of the doubt to Plaintiff's testimony about the limiting nature of his back pain, the ALJ properly considered Plaintiff's conservative treatment history, part-time work, and weighed the evidence of his normal examinations against those that demonstrated some limitations to conclude that Plaintiff was capable of performing his past relevant work. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("When

determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.") (internal citations omitted).

In sum, Plaintiff has presented no medical evidence of functional limitations greater than those found by the ALJ. As such, he has failed to meet his burden to demonstrate that he had a more restrictive RFC than found by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (plaintiff failed his duty to prove a more restrictive RFC). Accordingly, the RFC determination is supported by substantial evidence.

**B.     Appeals Council Review Was Not Erroneous.**

Plaintiff argues that remand is also warranted because the Appeals Council failed to mention the evidence he supplied for its review following the ALJ's decision. (Dkt. 13-1 at 15-19). The Court disagrees.

The record here demonstrates that the Appeals Council received Plaintiff's request for review of the ALJ's unfavorable decision on October 18, 2019. (Dkt. 10 at 172). On November 7, 2019, the Council acknowledged its receipt of Plaintiff's request and advised him of his right to submit a statement of facts or additional evidence in support of his request. (*Id*. at 17). Plaintiff argues that he supplied thirty pages of additional evidence to the Appeals Council for review, which were marked as "undated" in the record. (Dkt. 13-1 at 17). He does not state exactly when he submitted this evidence, nor does the administrative record clarify this issue. The record does reveal that the additional evidence

was date-stamped on March 9, 2020, and as such, became part of the administrative record subject to this Court's review. (*Id*. at 84-17). On July 16, 2020, the Appeals Council denied review and found that Plaintiff's reasons for disagreeing with the ALJ's decision did not provide a basis for altering it.[3] (*Id*. at 9).

As a general matter, where, as here, "the Appeals Council denies review, the ALJ's decision becomes the [Commissioner's] final decision," and it is this "final decision of the [Commissioner that] is subject to judicial review." *Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996); *see also Jessica v. Saul*, No. 5:19-CV-1427 (DEP), 2021 WL 797069, at *9 (N.D.N.Y. Mar. 2, 2021) (because it is the ALJ's decision that is the final decision once the Appeals Council denies review, the court does not have the authority to review the Appeals Council's non-final decision to deny review and its conclusions regarding the new evidence submitted by plaintiff). Because "new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision," this Court "review[s] the entire administrative record, which includes the new evidence, and determine[s], as in every case, whether there is substantial evidence to support the decision of the [Commissioner]." *Perez*, 77 F.3d at 45-46.

---

[3]  Page one of the Appeals Council's Notice indicates that Plaintiff's request for review was dated October 2, 2019, while the exhibit list and the Order attached to the Notice state October 18, 2019—the correct date of the Appeals Council's receipt of Plaintiff's request for review. (Dkt. 10 at 9-13).

Plaintiff correctly notes that the Appeals Council must consider additional evidence so long as it is new, material, and relates to the period on or before the ALJ's decision. *See* 20 C.F.R. § 416.1470 (a)(5), (b); *see also Rutkowski v. Astrue*, 368 F. App'x 226, 229 (2d Cir. 2010) ("[T]he Appeals Council, in reviewing a decision based on an application for benefits, will consider new evidence only if (1) the evidence is material, (2) the evidence relates to the period on or before the ALJ's hearing decision, and (3) the Appeals Council finds that the ALJ's decision is contrary to the weight of the evidence, including the new evidence."); *Lisa v. Sec'y of Dep't of Health & Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991) ("An appellant must show that the proffered evidence is (1) 'new' and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative.") (internal citations omitted).

Plaintiff argues that the Appeals Council failed to mention the additional evidence in its decision, yet provides no support for his argument. Moreover, the Appeals Council is not required to specifically discuss all the records submitted for its review in its decision when it denies review. *See Stephanie R. obo I.S. v. Comm'r of Soc. Sec.*, No. 1:19-cv-1037-DB, 2020 WL 7640936, at *9 (W.D.N.Y. Dec. 23, 2020) ("Although the Appeals Council did not specifically discuss all the records at issue, it was not required to do so under the regulations. The Appeals Council is not required to provide an elaborate explanation when it evaluates additional evidence presented."). "[E]ven when the Appeals Council declines to review a decision of the ALJ, it reaches its decision only after examining the entire record, including the new evidence submitted after the ALJ's

decision." *Perez*, 77 F.3d at 45; *see also Harrison v. Colvin*, No. 14-CV-604S, 2015 WL 5567534, at *3 (W.D.N.Y. Sept. 22, 2015) (plaintiff was not deprived of notice of the reasons her applications were denied by the Appeals Council or the opportunity to be heard on the new evidence submitted to the Appeals Council when the Council made the additional evidence part of the record and denied plaintiff's request for review).

Even assuming that the Appeals Council was required to mention the evidence in its denial notice and failed to do so, such error would be harmless because Plaintiff's additional evidence did not provide any new substantive findings capable of altering the ALJ's decision. *See Stephanie R. obo I.S.*, 2020 WL 7640936, at *9 ("Even if the Appeals Council should have discussed [the] evidence and failed to do so, any error is harmless because the evidence did not show a reasonable probability of changing the ALJ's decision."); *cf. Collazo v. Colvin*, No. 13 Civ. 5758 (RJS)(HBP), 2015 WL 9690324, at *13 (S.D.N.Y. Dec. 22, 2015) (the Appeals Council's failure to comply with the treating physician rule in its denial notice was harmless if the evidence submitted was not new, material, or relevant to the period on or before the date of the ALJ's decision).

Here, Plaintiff's additional evidence consisted of his treatment records by Dr. Suchy and Dr. Laurri dated July, September, October, and November 2019, as well as the copies of several prescription refill slips.[4] (Dkt. 10 at 84-17). While the Court agrees that the additional evidence was new to the record, Plaintiff failed to demonstrate how it would have compelled a different outcome in this case. *See Pollard v. Halter*, 377 F.3d 183, 193

---

[4] Plaintiff concedes that the February 2019 treatment note by Dr. Suchy was a duplicate of the one already part of the record. (Dkt. 13-1 at 18).

(2d Cir. 2004) ("The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently.") (internal citation omitted).

Specifically, the additional evidence revealed that Plaintiff was seen by his treatment providers on four separate occasions in 2019 (two after the ALJ's decision) for his back impairment. (Dkt. 10 at 89-04). He reported complaints of back pain that were consistent with his previous complaints of back pain made prior to the ALJ's decision. The evidence also revealed Plaintiff's antalgic gait, tenderness in the lower back area, reduced range of motion, as well as a positive straight leg test during some of the visits, all of which were consistent with some of his previous examinations that were considered by the ALJ in making his RFC determination. (*Id*. at 90, 94, 98). Moreover, during Plaintiff's September 2019 visit, Dr. Suchy noted that Plaintiff's symptoms have been unchanged from the previous visits, and that Plaintiff denied "any acute rapid progression of his condition." (*Id*. at 90-95). The additional evidence also referred to the August 6, 2019 MRI results, which predated the ALJ's hearing and demonstrated a disc extrusion at L4-L5 level with an annular tear deviating and compressing the thecal sac with severe stenosis, as well as moderate bilateral foraminal narrowing. (*Id*. at 95). These findings were consistent with the MRI results dated March 7, 2017, which were considered by the ALJ. (*Id*. at 27, 297). Plaintiff's additional records also revealed that he underwent an epidural injection on October 22, 2019; however, this fact alone would not have changed the ALJ's findings because the ALJ became aware of Plaintiff's approval to receive the injection at the hearing and subsequently noted it in his decision. (*Id*. at 55, 26).

Therefore, the Court finds that the evidence Plaintiff submitted to the Appeals Council was cumulative, and did not provide any new substantive findings capable of altering the ALJ's decision or changing the outcome of the case. Accordingly, because Plaintiff has "fail[ed] to establish that the new evidence submitted to the Appeals Council was inconsistent with either the medical evidence already in the record or with the ALJ's RFC determination," *see Countryman v. Colvin*, No. 6:15-CV-06131 EAW, 2016 WL 4082730, at *11 (W.D.N.Y. Aug. 1, 2016), the ALJ's decision remains supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 16) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 13) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 12, 2022
        Rochester, New York